UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NOS. 18-10495-RWZ, 18-11498-RWZ, 18-12101-RWZ

In re ROBERT J. SPENLINHAUER

<u>MEMORANDUM OF DECISION</u>

November 2, 2018

ZOBEL, S.D.J.

In this consolidated bankruptcy appeal, Robert J. Spenlinhauer ("Debtor") challenges several orders from the United States Bankruptcy Court for the District of Massachusetts. The parties submitted briefs in Civil Action No. 18-10495-RWZ and, on October 23, 2018, presented oral arguments regarding Civil Action Nos. 18-10495-RWZ, 18-11498-RWZ, and 18-12101-RWZ.

I.  **Factual Background**

Following are those aspects of the extensive proceeding in the bankruptcy court that are relevant to these appeals.

On December 16, 2013, the Debtor – in his individual capacity and as trustee and beneficiary of RJS Realty Trust, C.C. Canal Realty Trust, and Classic Auto Realty Trust – filed a voluntary Chapter 11 petition. 11 U.S.C. § 101 <u>et seq.</u>

On December 16, 2015, after becoming aware of actions by the Debtor inimical to the proceedings, the bankruptcy court appointed Lynne F. Riley ("Trustee") as the

1

Chapter 11 trustee.[1] See In re Spenlinhauer, No. 13-19191-JNF, 2016 WL 1452346 (D. Mass. Apr. 13, 2016) (affirming Chapter 11 trustee appointment). The Trustee shortly thereafter uncovered the Debtor's alleged tax liabilities, which prompted the Internal Revenue Service ("IRS")[2] and the Massachusetts Department of Revenue ("DOR") to become involved in the proceedings.

### A. The Vehicle Collection

On January 2, 2018, the Trustee filed an expedited motion to secure several of the Debtor's vehicles being stored at a foreclosed property in Osterville, Massachusetts, from which the Debtor would soon be evicted. To avoid potential loss to the estate, the Trustee proposed that a licensed and bonded auctioneer collect the vehicles and keep them in a secure facility in Holbrook, Massachusetts. The Debtor responded by informiing the court that some of the vehicles had been transferred to Parsonsfield, Maine, and proposed that the remaining vehicles also be transported to the same location prior to his likely eviction from the Osterville property.

After a hearing on January 24, 2018, the court granted the Trustee's motion because her proposal presented "less risk of loss to the estate" when compared to the Debtor's suggestion to transport the vehicles "approximately 180 miles to Parsonsfield, Maine and store them in an uninsured 'barn.'" Docket # 1312 ("Turnover Order").[3] The court noted that the Debtor failed to "provide any details on how the vehicles were going to be

---

[1] In particular, the Debtor completed several transactions without proper notice to or authorization by the court, including a payment of $65,000 to redeem a recreational vehicle and to purchase another vehicle.
[2] Following the bankruptcy court's approach, I use "IRS" to refer to the United States of America, as Creditor.
[3] Unless otherwise indicated, docket citations in this Memorandum refer to Case No. 13-bk-17191.

transported to Maine" nor did he present "a proposal for returning the vehicles to Massachusetts in the event the Trustee were to be authorized to take possession of [them]." Id. The Debtor's subsequent motion to vacate the order was denied. Docket # 1319.

### B. Case Dismissed and Reinstated

On March 6, 2018, the Trustee informed the court that the Debtor had not turned over any vehicle keys or otherwise permitted the Trustee and auctioneer to implement the court-ordered plan and that the vehicles were dispersed among eight different locations – including the barn in Parsonsfield, Maine. The court thereupon ordered the Debtor to:

> show cause, in writing, on or before March 9, 2018 at noon why he should not be held in contempt for failure to obey a lawful order of the Court and why his Chapter 11 case should not be converted to a case under Chapter 7 or dismissed under 11 U.S.C. [§] 1112(b). Any party in interest may file a response to the order to show cause or motion or request for relief relative to the Trustee's Status Report by March 9, 2018 at noon. The Debtor shall appear at a hearing on March 12, 2018 at 10:00 am to respond to the order to show cause and other requests for relief.

Docket # 1323 ("Show Cause Order").

The Debtor responded that "[a]ll vehicles are safe," argued against conversion to a Chapter 7 case, and "consent[ed] to the dismissal of [the] case." Docket # 1332. The IRS supported the proposed conversion to Chapter 7 and explained various tax-related estate liabilities that would be jeopardized if the case were to be dismissed. The Trustee, however, did not respond.

On March 9, 2018, the court dismissed the Debtor's case entirely, explaining that its decision was based on the IRS's response, the Debtor's submission, and the absence of further responses or requests for relief. The Trustee, in an Emergency Motion for Reconsideration, argued that dismissal was not in the best interests of the creditors and explained that she understood the court's order to be "directed to the Debtor" and not to require her response. Shortly thereafter, the court stayed the dismissal, reviewed additional briefing, held a hearing, and ultimately vacated its Dismissal Order and reinstated the case.

### C. Conversion to Chapter 7 and Contempt Issues

Following reinstatement, the Debtor continued to violate the court's orders and deadlines. On June 5, 2018, the Trustee filed a Motion for Contempt and Related Sanctions, based on her largely unsuccessful attempts to secure the vehicles pursuant to the court's January 24, 2018 Turnover Order. The Trustee also filed a Motion to Convert the case to a Chapter 7 proceeding. See 11 U.S.C. § 1112(b). After hearing both matters, the court granted the Trustee's Motion to Convert. It also issued an "interim order" on the Motion for Contempt and Related Sanctions, which (i) required the Debtor to provide the Trustee with the locations of all of the vehicles, as well as all keys, registrations, titles, and other documents relating to ownership; (ii) authorized the Trustee to "take all necessary action to safeguard and obtain possession of the vehicles;" and (iii) scheduled an evidentiary hearing on the Motion for Contempt and Related Sanctions on July 10, 2018. Docket # 1510.

On August 10, 2018, the bankruptcy judge issued her decision that the testimony "unequivocally established" that the Debtor had not complied with the court's June 25,

4

2018 order and that, while testifying, he expressly admitted violating the January 24, 2018 Turnover Order. She set yet another deadline for compliance, which the Debtor failed to meet.[4]

After another evidentiary hearing on September 17, 2018, the bankruptcy judge found that the Debtor "continue[d] to flagrantly disobey" court orders "without cause or justification" and therefore imposed monetary sanctions. Docket # 1612. In the event of further noncompliance, the judge stated that she would consider "entry of orders of arrest and incarceration." Id.

Ultimately, the Debtor cooperated with the Trustee and facilitated recovery of the vehicles from various sites on Cape Cod, Massachusetts, as well as the Parsonsfield, Maine, location. As of the date of this Memorandum, the vehicle collection is scheduled for sale by public auction on November 3, 2018.

I.      **Jurisdiction and Standard of Review**

Under 28 U.S.C. § 158(a), a district court has jurisdiction to hear appeals from a bankruptcy judge's "final judgments, orders and decrees." Generally, this court reviews the bankruptcy court's factual findings for clear error and its legal conclusions de novo. In re Handy, 624 F.3d 19, 21 (1st Cir. 2010). A bankruptcy court's decision to grant a Rule 60(b) motion is reviewed for abuse of discretion, In re LaFata, 483 F.3d 13, 23 (1st Cir. 2007) (citing Roger Edwards, LLC v. Fiddes & Son, Ltd., 427 F.3d 129, 132 (1st Cir. 2005)), as is its decision to convert a case to Chapter 7, In re Andover Covered Bridge,

---

[4] Instead, the Debtor sought an extension of the deadline, a trial regarding his alleged contempt, and then objected – yet again – to turning over the vehicles to the auctioneer. The court denied the motions and requests.

LLC, 553 B.R. 162, 171 (B.A.P. 1st Cir. 2016) (citing In re Gilroy, No. BAP NH 07-054, 2008 WL 4531982, at *4 (B.A.P. 1st Cir. Aug. 4, 2008)), and its imposition of sanctions, In re Hann, 711 F.3d 235, 242 (1st Cir. 2013).

## II. Discussion

During the proceedings just described, the Debtor appealed the several bankruptcy court orders regarding (a) the transport and storage of the vehicles; (b) the reinstatement of the bankruptcy case; (c) the conversion of the case to Chapter 7; and (d) the contempt finding and imposition of sanctions. I address each appeal in turn.

### A. Transport and Storage of Vehicles

After the Debtor appealed the bankruptcy court's order denying his Motion to Vacate the Turnover Order, I denied his Motion to Stay. Civil Action No. 18-10495-RWZ, Docket # 7 ("[The Debtor] has not shown that his appeal is likely to succeed, nor that he will be irreparably harmed. [T]he [Turnover Order] is clearly in the public interest, notwithstanding appellant's desire for a different place.").

Given the current status of the bankruptcy proceedings, I find no live issue with respect to which this court could provide "effectual relief." Horizon Bank & Tr. Co. v. Massachusetts, 391 F.3d 48, 53 (1st Cir. 2004) (quoting Church of Scientology of California v. United States, 506 U.S. 9, 12 (1992)). Since the Debtor's appeal of this issue, the bankruptcy case has been converted to a Chapter 7 liquidation proceeding, the vehicles have finally been turned over, and the bankruptcy court has approved the public auction of the vehicle collection as part of the estate liquidation. It is therefore unclear what relief, if any, the Debtor could seek in his appeal of the decision regarding

the interim storage of the vehicles during the then-Chapter 11 case. In his brief, the Debtor requests that he be allowed to "submit evidence relative to the storage of [the] vehicles" to the bankruptcy court;[5] at oral argument on October 23, 2018, his counsel indicated that the relief sought is dismissal of the bankruptcy proceedings entirely. The former requested relief would be futile; the latter has no basis in law. See id. ("[A] case ... can become moot because of a change in the fact situation underlying the dispute, making relief now pointless."). The appeal from the Turnover Order is dismissed as moot.

### B. Order Vacating Dismissal

The Debtor next appeals the bankruptcy court's Order Vacating Dismissal, which reinstated the bankruptcy case.[6] As the bankruptcy court explained in its detailed memorandum, the Trustee demonstrated "excusable neglect" under Fed. R. Civ. P. 60(b)(1) and relief from the Dismissal Order was thus warranted. Docket # 1405; see

---

[5] The Debtor complains that the bankruptcy court failed to hold an evidentiary hearing to assess his Parsonsfield, Maine, proposal. The record belies any suggestion that the court did not fairly and carefully consider the merits of the competing proposals. In its February 27, 2018 order, the court explained that its decision to authorize the Trustee's proposal was based, inter alia, on consideration of:
- Trustee's Motion to Secure and Store Vehicles (Docket # 1293);
- Debtor's response to the Trustee's Motion to Secure and Store Vehicles (Docket # 1301);
- JHCC's response to Trustee's Motion to Secure and Store Vehicles (Docket # 1302);
- Debtor's Report Relative to Safekeeping of Vehicles (Docket # 1303);
- Representations and arguments made at the January 24, 2018 hearing (Docket # 1306);
- Debtor's Motion to Vacate (Docket # 1315);
- Trustee's response to Debtor's Motion to Vacate (Docket # 1316); and
- Debtor's response to the Trustee's response to Debtor's Motion to Vacate (Docket # 1318).

Docket # 1319.

[6] Given the consolidation of 18-cv-10495-RWZ and 18-cv-11498-RWZ, I need not grant leave for the Debtor's appeal of the Order Vacating Dismissal, as suggested in Cross-Appellant IRS's brief. That order has merged into the subsequent, appealable Conversion Order that is now before the court in this consolidated appeal. See e.g., In re Petrone, 498 B.R. 1, 3 (B.A.P. 1st Cir. 2013) (Olympic Mills Corp. v. DCC Operating, Inc., 333 B.R. 540, 548 (B.A.P. 1st Cir. 2005), aff'd, 477 F.3d 1 (1st Cir. 2007)).

7

Fed. R. Bankr. P. 9024 (making Fed. R. Civ. P. 60 applicable to cases under the Bankruptcy Code).

Bankruptcy courts enjoy "broad discretion in deciding motions for relief under Rule 60(b)." In re Rodriguez, 516 B.R. 177, 184 (B.A.P. 1st Cir. 2014). A determination of excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances." In re Rivera, 486 B.R. 574, 578 (B.A.P. 1st Cir. 2013) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 395 (1993)).

I discern no abuse of discretion in the court's Order Vacating Dismissal. A straightforward reading of the Show Cause Order confirms that the bankruptcy judge had failed to expressly require a response from any party other than the Debtor, stating only that "[a]ny party in interest may file a response." Docket # 1405. Her finding that the Trustee's "neglect in failing to oppose dismissal was excusable" under Fed. R. Civ. P. 60(b)(1) is thus well-founded and provided an equitable resolution in light of the relevant circumstances.[7] Id. Accordingly, the Order Vacating Dismissal is affirmed.

### C. Conversion Order

The Debtor has also appealed the bankruptcy court's Conversion Order, which transformed the case into a Chapter 7 liquidation proceeding.

---

[7] Following a sufficient explanation that the Trustee demonstrated excusable neglect under Rule 60(b)(1), the bankruptcy court mentioned factors for relief under Rule 60(b)(6). Despite the digression, I read the court's memorandum to clearly predicate relief on Rule 60(b)(1). Contra In re Acevedo, 577 B.R. 429, 434–35 (D. Mass. 2017).

Upon the filing of a motion to convert a Chapter 11 case, a bankruptcy court must determine whether "cause" exists to convert and, if so, whether conversion is in the best interests of creditors and the estate. See In re Hoover, 828 F.3d 5, 8 (1st Cir. 2016). The relevant statute contains a non-exhaustive list of possible circumstances that may constitute "cause." 11 U.S.C. § 1112(b)(4); see In re Gonic Realty Tr., 909 F.2d 624, 626 (1st Cir. 1990). After finding "cause," a bankruptcy court has "broad discretion" to determine what approach is in the best interests of creditors and the estate. In re Andover Covered Bridge, LLC, 553 B.R. at 171 (citing In re Gilroy, 2008 WL 4531982, at *4).

Here, the court noted that the Debtor "transported some of the vehicles [subject to the Turnover Order] to Parsonsfield, Maine," that he had been unable to obtain confirmation of a Chapter 11 plan over a period of four and a half years, and that his outstanding tax issues "may take years to resolve in the United States Tax Court." Docket # 1528. The court then determined that conversion to a Chapter 7 case was in the best interests of creditors and the estate because the Debtor did not have a "confirmable plan in prospect." Id.

First, the record amply supports the court's finding adequate cause in the Debtor's failure to comply with a court order. 11 U.S.C. § 1112(b)(4)(E). As explained earlier in this Memorandum, the Debtor consistently refused compliance with the Turnover Order and, at the time of the conversion, the bankruptcy court had denied outright the Debtor's attempts to vacate the order and I had denied his Motion to Stay the order pending appeal. This conduct by the Debtor, even alone, is enough to sustain the ruling below. In re Hoover, 828 F.3d at 9.

Second, as to the "best interests" analysis, the bankruptcy court did not abuse its discretion in ruling that, on the facts of this case, conversion was in the best interests of creditors and the estate and thus fully warranted. The Bankruptcy Code does not define "best interests" for purposes of the 11 U.S.C. § 1112(b) inquiry, but courts typically consider the following factors:

> (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal, . . . [2] the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors, [3] in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise, . . . [4] whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests, [5] whether a plan has been confirmed and whether any property remains in the estate to be administered ....

In re Andover Covered Bridge, LLC, 553 B.R. at 178 (quoting In re Costa Bonita Beach Resort, Inc., 513 B.R. 184, 200–01 (Bankr. D.P.R. 2014)). Given the Debtor's misconduct and the lack of a confirmed Chapter 11 plan, the court reasonably and correctly decided that conversion was the course of action most advantageous to both the creditors and the estate. The Conversion Order is affirmed.

### D. Contempt and Sanctions Order

Lastly, the Debtor challenges the bankruptcy court's order finding him in contempt and imposing sanctions.[8]

---

[8] Prior to the bankruptcy court's issuance of a final order on contempt and sanctions, it issued an "interim order." Docket # 1510. The Debtor appealed both orders. I address only the second order, which is the only final, appealable order. See In re Fatsis, 405 B.R. 1, 6 (B.A.P. 1st Cir. 2009).

10

The bankruptcy court's decision to impose sanctions ultimately "embodie[d] a judgment call." In re Charbono, 790 F.3d 80, 85 (1st Cir. 2015). Yet in exercising its discretion to impose sanctions, the court was required to give "individualized consideration to the particular circumstances." Id. at 89 (citing Velázquez Linares v. United States, 546 F.3d 710, 711 (1st Cir. 2008)). Here, the court conducted three hearings on the Trustee's Motion for Contempt and Related Sanctions: a preliminary hearing on June 25, 2018, and two evidentiary hearings on July 10, 2018 and September 17, 2018, respectively. It then found that the Debtor failed to comply with its orders regarding delivery of the non-exempt assets of the estate, including the vehicles, keys, and registration documents. Given the uncontradicted fact of the Debtor's noncompliance and the clear and unambiguous language of the several court orders requiring him to turn over the vehicles, the bankruptcy court's contempt finding is affirmed.

While the court denied the Trustee's request for "a monetary sanction as penalty for willfully moving [the] [v]ehicles to a location expressly prohibited by the [court's] order," the court did order the Debtor to compensate the estate for the legal fees and expenses actually incurred by the Trustee in attempting to obtain compliance with the court's orders. The amount of $18,982 was based on a detailed affidavit submitted by the Trustee. In addition, prior to imposing the compensatory sanction, the court ordered the Debtor to file an affidavit setting forth his monthly income and expense information and at the September 17, 2018 evidentiary hearing, it inquired as to the Debtor's ability to pay any amounts ordered. Thereafter, the court concluded that sanctions

11

compensating the estate were appropriate "[b]ased upon the Debtor's testimony as to available sources of revenue." Docket # 1612.

The bankruptcy court's imposition of contempt sanctions – based on a finding of clear defiance of court orders and ordered in an amount directly related to expenses incurred as a result of such defiance – is affirmed.

## IV. Conclusion

For the foregoing reasons, the Debtor's appeal of the Order Denying the Motion to Vacate (Civil Action No. 18-10495-RWZ) is dismissed. The bankruptcy court's Order Vacating Dismissal (Civil Action No. 18-10495-RWZ), Conversion Order (Civil Action No. 18-11498-RWZ), and Contempt and Sanctions Order (Civil Action No. 18-12101-RWZ) are affirmed.

As discussed at oral argument, the Debtor shall have seven days from the date of this Memorandum to alert this court to matters remaining on appeal not addressed herein.

November 2, 2018  
DATE

/s/ Rya W. Zobel  
RYA W. ZOBEL  
SENIOR UNITED STATES DISTRICT JUDGE